**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**RURAL TELEPHONE SERVICE
CO., INC.,**

      **Plaintiff,**

      v.                                                  **Case No.  08-2052-JWL/JPO**

**ALLTEL COMMUNICATIONS, INC.,**

      **Defendant.**

_____

**MEMORANDUM AND ORDER**

Plaintiff Rural Telephone Service Co., Inc. filed this lawsuit seeking compensation for telecommunications connection service it has provided to defendant Alltel Communications, Inc.  For years, Rural provided service to Alltel pursuant to the terms of a "Stipulation" entered into between the parties.  In November of 2006, Alltel stopped making payments to Rural for those services.  Since that time, Rural has continued to provide services to Alltel, and it now seeks damages for Alltel's alleged non-payment by asserting claims for breach of contract, quantum meruit, and unjust enrichment.  This matter is currently before the court on Alltel's Motion to Dismiss (doc. #9) Rural's complaint on various grounds.  For the reasons explained below, the court will grant the motion to the extent that it will stay this case while the parties present certain issues discussed below to the Kansas Corporation Commission (KCC) for determination.

## BACKGROUND

According to the allegations in Rural's complaint, on or about September 29, 2003, Rural and Alltel entered into a contract entitled "Stipulation." The agreement required Rural to provide Alltel with "RCC [Radio Common Carrier] and CMRS [Commercial Mobile Radio Service] interconnection service and a reciprocal compensation arrangement pursuant to [Rural's] RCC Tariff." Stipulation at 2. Both parties performed according to the terms of the agreement until November 2006. Then, suddenly, in November of 2006, Alltel "stopped paying plaintiff for its interconnection service, and it has failed and refused to make payment since then." Am. Compl. (doc. #4) ¶ 10, at 3. Rural further alleges that it has continued to perform its obligations under the Stipulation, and that it has suffered damages by virtue of Alltel not paying for those services. Rural asserts claims for breach of contract, quantum meruit, and unjust enrichment.

Alltel has now filed a motion to dismiss in which it argues that Rural's breach of contract claim should be dismissed for failure to state a claim upon which relief can be granted, for lack of subject matter jurisdiction, and under the doctrines of primary jurisdiction and/or exhaustion of administrative remedies. Alltel further contends that Rural's quantum meruit and unjust enrichment claims should be dismissed because those equitable claims for compensation would frustrate the federal regulatory scheme. The foundation for Alltel's motion is an order by the Federal Communication Commission (FCC) entitled *In the Matter of Developing a Unified Intercarrier Compensation Regime; T-Mobile et al.*, 20 F.C.C.R. 4855 (2005) (hereinafter *T-Mobile*), which the court will discuss in more detail below. In

response, Rural points out that it is considered a "rural" ILEC that is exempt from the duty to negotiate discussed in *T-Mobile*.[1] As such, Rural argues that the FCC's *T-Mobile* order does not apply to it. Rural further argues that the Stipulation agreement is precisely the type of contractual compensation arrangement expressly authorized by the FCC in its *T-Mobile* decision.

## DISCUSSION

For the reasons explained below, the court rejects Alltel's argument that this court lacks subject matter jurisdiction over this dispute. The court finds, however, that the parties' dispute is permeated with issues concerning intercarrier compensation obligations, and the KCC should resolve these issues in the first instance in light of its considerable experience and expertise regarding intercarrier compensation obligations. Consequently, a stay is warranted under the doctrines of primary jurisdiction and/or exhaustion of administrative remedies.

**I.    The Parties' Arguments**

The parties entered into the Stipulation that is the subject of this lawsuit on September 29, 2003. The FCC released its order in *T-Mobile* approximately seventeen months later on February 24, 2005. In *T-Mobile*, the FCC clarified the type of arrangements necessary to

---

[1] Rural is what is known as a local exchange carrier (LEC) and, more specifically, an incumbent local exchange carrier (ILEC). Alltel is a Commercial Mobile Radio Service (CMRS) provider.

3

trigger payment obligations for the exchange of traffic between LECs and CMRS providers. The overarching issue debated between the parties, then, is the extent to which the Stipulation is enforceable in light of the FCC's subsequent order in *T-Mobile*.

In *T-Mobile*, the FCC considered a petition for a declaratory ruling asking the FCC "to reaffirm 'that wireless termination tariffs are not a proper mechanism for establishing reciprocal compensation arrangements for the transport and termination of traffic.'" ¶ 1. One of the provisions of the Telecommunications Act of 1996 imposes on LECs "[t]he duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications." 47 U.S.C. § 251(b)(5). The FCC explained the issue as follows:

> Although section 251(b)(5) and the Commission's reciprocal compensation rules reference an "arrangement" between LECs and other telecommunications carriers, including CMRS providers, they do not explicitly address the type of arrangement necessary to trigger the payment of reciprocal compensation or the applicable compensation regime, if any, when carriers exchange traffic without making prior arrangements with each other. As a result, carrier disputes exist as to whether and how reciprocal compensation payment obligations arise in the absence of an agreement or other arrangement between the originating and terminating carriers.

*T-Mobile* ¶ 4. The FCC noted that "[t]he practice of exchanging traffic in the absence of an interconnection agreement or other compensation arrangement has led to numerous disputes between LECs and CMRS providers as to the applicable intercarrier compensation regime." *Id.* ¶ 6. Thus, in light of existing carrier disputes, the FCC decided that it was "necessary to clarify the type of arrangements necessary to trigger payment obligations." *Id.* ¶ 9.

The FCC found that "[b]ecause the existing compensation rules are silent as to the type of arrangement necessary to trigger payment obligations, we find that it would not have

4

been unlawful for incumbent LECs to assess transport and termination charges based upon a state tariff." *Id.* ¶ 10. The FCC denied the petition itself in light of its finding that it could not "conclude that a tariff filed by an incumbent LEC imposing termination charges on wireless traffic would be unlawful under the existing rules." *Id.* ¶ 13. The FCC took further action to amend its rules "going forward in order to make clear [its] preference for contractual arrangements for non-access CMRS traffic." *Id.* ¶ 14. Consequently, it amended its rules to prohibit LECs from imposing compensation obligations for non-access traffic pursuant to tariffs. *Id.*; *see also* 47 C.F.R. § 20.11(d) ("Local exchange carriers may not impose compensation obligations for traffic not subject to access charges upon commercial mobile radio service providers pursuant to tariffs."). The FCC stated as follows: "Therefore, such existing wireless termination tariffs shall no longer apply upon the effective date of these amendments to our rules." *T-Mobile* ¶ 14. The FCC further noted that it was amending its rules to clarify that an ILEC may request interconnection from a CMRS provider and invoke the negotiation and arbitration procedures set forth in 47 U.S.C. § 252, and the FCC further established interim compensation requirements. *Id.* ¶ 16; *see also* 47 C.F.R. § 20.11(e) (implementing this rule). The FCC clarified that "[u]nder the amended rules, however, in the absence of a request for an interconnection agreement, no compensation is owed for termination." *T-Mobile* ¶ 14 n.57.

With an understanding of the FCC's order in *T-Mobile*, then, the court can now explain the parties' arguments. Alltel's motion to dismiss Rural's complaint for failure to state a claim rests, first and foremost, on the fact that under *T-Mobile* LECs (such as Rural)

5

cannot impose payment obligations on CMRS providers (such as Alltel) via tariffs. 47 C.F.R. § 20.11(d). Alltel contends that a LEC like Rural can obtain an interconnection agreement only via the procedure set forth in 47 U.S.C. § 252, and the Stipulation at issue here does not qualify as an interconnection agreement because it was not approved by the KCC. *See* 47 U.S.C. § 252(e)(1) ("Any interconnection agreement adopted by negotiation or arbitration shall be submitted for approval to the State commission."). Thus, Alltel argues that in the absence of an interconnection agreement, no compensation is owed.

In response to Alltel's argument, Rural contends that it is a rural ILEC that is exempt from the duty to negotiate set forth in 47 U.S.C. § 252(c). Specifically, § 252(f)(1)(A) provides that subsection (c), which imposes a variety of additional obligations on ILECs, does not apply to a rural telephone company until (i) the rural ILEC has received a bona fide request for interconnection, services, or network elements, and (ii) the state commission first makes certain required findings terminating the ILEC's rural exemption. One of the obligations set forth in subsection (c) is "[t]he duty to negotiate in good faith in accordance with section 252 of this title." § 252(c)(1). Thus, a rural ILEC is exempt from the duty to negotiate in good faith unless and until the state commission first makes certain required findings. *See Consolidated Comm'n of Fort Bend Co. v. Pub. Util. Comm'n*, 497 F. Supp. 2d 836, 839 (W.D. Tex. 2007) ("A company that qualifies as a rural ILEC . . . is relieved of the duty to negotiate an interconnection agreement unless the state commission terminates the rural ILEC's exemptions."). Rural therefore argues that the FCC's order in *T-Mobile* does not apply because it rests on a statutory framework – namely, the obligation set forth

in § 252 to negotiate in good faith – that does not apply to Rural. Alltel does not dispute that Rural qualifies for the rural exemption, but contends that the rural exemption does not permit a rural ILEC to obtain compensation post-*T-Mobile* via tariff, establish alternative compensation arrangements outside of § 252, or ignore its interconnection and reciprocal compensation obligations set forth in § 251(a) & (b) from which it is not exempt as a rural ILEC.

The parties then further debate the extent to which the Stipulation is enforceable in light of *T-Mobile*. According to Rural, the Stipulation is precisely the type of contractual compensation arrangement expressly authorized by the FCC in *T-Mobile*. Rural argues that *T-Mobile* addresses the unilateral billing of CMRS providers by LECs solely by using filed tariffs, whereas here the Stipulation is an agreement between the parties that is consistent with the FCC's stated preference in *T-Mobile* for promoting negotiated contractual compensation arrangements. Rural characterizes the provision of the Stipulation which calls for "a reciprocal compensation arrangement pursuant to [Rural's] RCC Tariff" as merely serving to incorporate an external term rather than resulting in Rural billing Alltel unilaterally pursuant to a filed tariff. Thus, Rural argues that this is a simple contract dispute.

Alltel, on the other hand, insists that the Stipulation results in it being billed pursuant to a filed tariff in violation of *T-Mobile*. Alltel reiterates that under *T-Mobile*, Rural's sole method to obtain compensation is an interconnection agreement and both parties agree that the Stipulation does not qualify as an interconnection agreement. Alltel argues, alternatively, that if the agreement is in fact an interconnection agreement then Rural's complaint must be

dismissed for lack of subject matter jurisdiction. Alltel further argues that to the extent that Rural's right to relief flows from a tariff, Rural's breach of contract claim must be dismissed based on primary jurisdiction and/or failure to exhaust administrative remedies because the KCC did not decide that claim in the first instance. In response to these arguments, Rural essentially contends that deferring this matter to the KCC is unwarranted because this collection dispute does not implicate the KCC's expertise.

**II.     Resolution**

After careful consideration of the parties' arguments and authorities cited, as well as related case law, it is clear to the court that the overwhelming bulk, and perhaps all, of the issues presented in this case must first be presented to the KCC. The more difficult issue is determining whether this is as a result of this court's lack of subject matter jurisdiction or because of the doctrines of primary jurisdiction and/or exhaustion of administrative remedies. For the reasons explained below, the court rejects Alltel's argument concerning the court's lack of subject matter jurisdiction. The court further concludes that a stay is warranted under the doctrines of primary jurisdiction and/or exhaustion of administrative remedies.

*A.     Subject Matter Jurisdiction*

The court's analysis begins with Alltel's argument that if the Stipulation is in fact an interconnection agreement, this court lacks jurisdiction to hear the dispute until the state commission has decided the dispute in the first instance. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (subject matter jurisdiction involves the court's power to hear a case); *In re Aramark Leisure Servs.*, 523 F.3d 1169, 1173 (10th Cir. 2008) (before addressing the

merits of the case the court must first determine the issue of subject matter jurisdiction). In support of this argument, Alltel relies on *Contact Communications v. Qwest Corp.*, 246 F. Supp. 2d 1184 (D. Wyo. 2003). In *Contact*, the plaintiff brought an action for damages for breach of two interconnection agreements that had been approved by the Wyoming Public Service Commission (PSC). *Id.* at 1185-86. The defendant argued the court did not have subject matter jurisdiction because the plaintiff did not first seek relief through the PSC. *Id.* at 1187. Agreeing with the defendant, the court reasoned that the Telecommunications Act of 1996 is a comprehensive regulatory scheme that places the initial responsibility of resolving disputes arising out of interconnection agreements with state commissions. *Id.* at 1191. Relying on the fact that the Act only permits a party "aggrieved" by a state commission's determination to bring an action in federal court, 47 U.S.C. § 252(e)(6), the court held that it lacked subject matter jurisdiction to decide the plaintiff's claims in the first instance. *Id.* at 1190-91. Other district courts have reached similar conclusions. *See, e.g.*, *Alliance Commc'ns Co-op, Inc. v. WWC License, L.L.C.*, Case No. 05-4181, 2007 WL 1074470, at *3-*4 (D.S.D. Mar. 29, 2007) (concluding the court lacked subject matter jurisdiction over an interconnection agreement dispute which had not been presented to the South Dakota Public Utilities Commission); *N. Ark. Tel. Co. v. Cingular Wireless, LLC*, Case No. 05-3044, 2006 WL 2547400, at *2-*3 (W.D. Ark. Aug. 31, 2006) (same, where plaintiff's claims were based on the defendants' alleged failure to pay plaintiff for terminating defendants' traffic).

After careful consideration of this line of authority, the court is more persuaded by the careful and thoughtful reasoning of the district court in *Ohio Bell Tele. Co. v. Global Naps Ohio, Inc.*, 540 F. Supp. 2d 914 (S.D. Ohio 2008). There, the court pointed out that § 252(e)(6) authorizes federal court actions challenging "determination[s]" of state commissions brought by "aggrieved" parties. *Id.* at 919. Observing the significant authority given to state public utility commissions over interconnection agreements between carriers, the court noted that "federal courts will be called on only when a party dissatisfied with the state commission's ruling seeks judicial review." *Id.* at 920. The court therefore determined that the plaintiff in that case was obligated to exhaust its administrative remedies by first litigating its breach-of-interconnection-agreement claims before the public utility commission. *Id.* The court noted that in *Eberhart v. United States*, 546 U.S. 12 (2005), the Supreme Court cautioned courts and litigants not to use the label "jurisdictional" for claim-processing rules, but rather only for purposes of delineating the class of cases (subject matter jurisdiction) and persons (personal jurisdiction) falling with a court's adjudicatory authority. *Ohio Bell Tele. Co.*, 540 F. Supp. 2d at 921 (quoting *Eberhart*, 546 U.S. at 16). Relying on subsequent authority under the Telecommunications Act, the court concluded that the Act's exhaustion requirement is best treated as an affirmative defense, not a jurisdictional bar. *Id.* at 923.

Here, then, the court concludes that to the extent that the Stipulation may in fact be an interconnection agreement, this does not deprive the court of jurisdiction to hear the parties' dispute. Instead, it requires Rural to first exhaust any administrative remedies

10

available to it. In determining whether exhaustion is required, there is of course a question of whether the Stipulation is in fact an interconnection agreement. Alltel contends that it is not an interconnection agreement because it was not approved by the KCC. The parties also point out the sentence in the Stipulation itself that states as follows: "This Stipulation shall not be construed to be an interconnection agreement or evidence of the negotiation of an interconnection agreement." Based on these considerations, the parties do not contend that the Stipulation is an interconnection agreement. But, the court is not persuaded that the Stipulation necessarily does not qualify as an interconnection agreement or that the parties can stipulate away the fact that it might be an interconnection agreement. The agreement specifically requires Rural to provide Alltel with "interconnection service" and a compensation arrangement pursuant to Rural's tariff. Furthermore, Rural's complaint alleges that Alltel stopped paying "for its interconnection service." Because, as discussed above, resolution of the issue of whether the agreement is in fact an interconnection agreement is not a threshold issue necessary to the court's determination of its own jurisdiction, the court declines to resolve the issue of whether the Stipulation is in fact an interconnection agreement. This is an issue, like many others in the case (discussed below), that properly falls within the expertise of the KCC. The critical point is that, even if the Stipulation might be an interconnection agreement, this fact would not deprive the court of subject matter jurisdiction.

  B. *Primary Jurisdiction*

11

"Even where a court has subject matter jurisdiction over a claim, courts have discretion to refer an issue or issues to an administrative agency." *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1255, 1238 (10th Cir. 2007). This doctrine specifically applies to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. *Id.* The doctrine is designed to "allow agencies to render opinions on issues underlying and related to the cause of action." *Id.* (quotation omitted). "It is designed to allow an agency to pass on issues within its particular area of expertise before returning jurisdiction to the federal district court for final resolution of the case." *Id.* (same). This doctrine is distinct from the concept of exhaustion, which prevents a federal court from exercising jurisdiction over a claim until all administrative remedies have been pursued. *Id.* In considering whether to invoke the doctrine of primary jurisdiction, this court must "consider whether the issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency." *Id.* (quotation omitted).

Here, the parties' dispute is permeated with issues concerning intercarrier compensation obligations that are not within the conventional experience of judges, that require the KCC's exercise of discretion in determining the impact of the *T-Mobile* decision, and that should, in all fairness, be applied uniformly and consistently in regulating intercarrier compensation obligations. This includes the vast majority of issues presented in the parties' memoranda and briefs relating to the current motion. Specifically, it includes

12

determining (1) whether the Stipulation qualifies as an interconnection agreement, (2) the extent to which that determination places the parties' dispute within the KCC's jurisdiction, thus requiring the exhaustion of administrative remedies, (3) the impact of the *T-Mobile* decision on the parties' pre-existing Stipulation, (4) the impact of the *T-Mobile* decision on a rural ILEC such as Rural, (5) the extent to which Rural is entitled to compensation pursuant to the Stipulation and/or its tariff, and (6) determining the appropriate measure of compensation if Rural is not entitled to compensation under the Stipulation and/or its tariff. Additionally, the KCC's resolution of these issues might give rise to a need for Rural to exhaust its administrative remedies with the KCC before seeking relief in this court. Permitting the KCC to resolve these issues in the first instance will promote the use of its considerable experience and expertise regarding intercarrier compensation obligations.

The court is unpersuaded by Rural's attempt to characterize the current dispute as nothing more than a contract dispute. Even insofar as it might be characterized as a simple contract dispute, the Stipulation nonetheless incorporated the compensation arrangement under Rural's tariff. As such, the KCC must first interpret and construe that tariff before Rural may resort to the courts. *Hayes Sight & Sound, Inc. v. ONEOK, Inc.*, 281 Kan. 1287, 1331, 136 P.3d 428, 456 (2006); *Grindsted Prods., Inc. v. Kansas City Power & Light Co.*, 21 Kan. App. 2d 435, 448-49, 901 P.2d 20, 28-29 (1995).

Invoking the doctrine of primary jurisdiction suspends the judicial process pending the referral of such issues to the administrative body for its views. *TON Servs., Inc.*, 493 F.3d at 1238. The court may retain jurisdiction over the proceedings by staying the

13

plaintiff's claims pending agency action or, if neither party will be unfairly disadvantaged, dismissing the case without prejudice. *Id.* Here, the court believes that the most prudent course of action is to stay further action on Rural's claims in this case pending resolution of the issues that can and should be determined by the KCC in the first instance. Accordingly, this case is stayed until further order of the court.[2]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Alltel Communications, Inc.'s Motion to Dismiss (doc. #9) is granted to the extent that the court will stay this case while the parties present the issues set forth above to the KCC for determination.

**IT IS FURTHER ORDERED** that this case is hereby referred to the magistrate judge assigned to this case for purposes of monitoring the stay and obtaining updates from the parties concerning the impact on this case of any applicable rulings by the KCC.

---

[2] Alltel's motion to dismiss Rural's quantum meruit and unjust enrichment claims is denied without prejudice. This aspect of Alltel's motion is based on *Union Tele. Co. v. Qwest Corp.*, 495 F.3d 1187 (10th Cir. 2007), in which the court held that federal law requires parties to set rates through interconnection agreements and therefore allowing the plaintiff to recover damages under a theory of unjust enrichment or quantum meruit would frustrate the federal regulatory scheme. *Id.* at 1197. As discussed above, however, the KCC must decide in the first instance the extent to which Rural, as a rural ILEC, is subject to this requirement. Consequently, the court will await the KCC's ruling before it addresses the viability of Rural's quantum meruit and unjust enrichment claims.

**IT IS SO ORDERED** this 23rd day of May, 2008.

                                          s/ John W. Lungstrum
                                          John W. Lungstrum
                                          United States District Judge